**SO ORDERED.**

**SIGNED this 2nd day of April, 2015.**





Robert E. Nugent
United States Chief Bankruptcy Judge

DESIGNATED FOR ONLINE PUBLICATION ONLY

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| FREDERICK DEAN RICE, II | ) | Case No. 11-11291 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

**ORDER OVERRULING SEDGWICK COUNTY'S OBJECTION
AND GRANTING MOTION FOR SALE NO. 3**

A creditor is bound by the terms of a confirmed chapter 11 plan whether it objects to the plan or not. Property dealt with by the plan is, except as provided in the plan, free and clear of all creditors' claims and interests, unless those debts are not dischargeable. In Kansas, unpaid ad valorem tax on real property is due and payable on the first day of November and a lien for the tax attaches on that date. The lien continues until all of the tax, and any interest and penalties, has been paid in

1

full. Ad valorem property tax claims are excepted from discharge only to the extent they are accorded a priority under § 507(a)(8)(B) and that subsection limits priority to only those taxes that could last be paid without penalty within one year of filing.

In this case, the debtor's plan provided that certain of his rental real estate would be sold and, because the rentals were in such distressed condition, the tax claims against them would be allowed in one-half of the county's valuation of the various tracts and paid upon the sale of the tracts. Sedgwick County received notice of the plan, but did not object to its confirmation. Now that the plan has been confirmed, the County objects to the debtor's motion to sell the tracts and pay its claim as the plan provides.[1] But, because the County did not object to the plan, it is bound by its terms. The reorganized debtor received the property free and clear of the County's claims, except as the plan provided. Sedgwick County's sale objection must be overruled.[2]

### *Jurisdiction*

This is a core proceeding over which the Court may exercise subject matter jurisdiction.[3]

### *Facts*

Frederick Rice filed a chapter 13 case on May 3, 2011; the case was subsequently converted to chapter 11. Mr. Rice has suffered from mental illness for

---

[1] Dkt. 475 (Sale No. 3 Motion), 482 (Sedgwick County's Objection).
[2] The debtor/guardian ad litem (GAL) Calvin Wiebe appears by counsel W. Thomas Gilman. Creditor Sedgwick County appears by Sedgwick County Counselor Patricia J. Parker.
[3] 28 U.S.C. §§ 157(b)(1) and (b)(2)(A), (N), (O); 28 U.S.C. § 1334.

2

a number of years. Early on, the Court appointed Calvin L. Wiebe as guardian ad litem (GAL) to protect Mr. Rice's interests in this case.[4]

Mr. Rice's chapter 11 plan provided that his assets would be liquidated and his claims paid down so that income on the remaining assets could amortize the remaining debt and pay Mr. Rice's living expenses.[5] That plan was properly noticed to the creditors and confirmed on July 23, 2014.[6] Sedgwick County, whose rights were altered by the plan, but who failed to object to its confirmation, now objects to the debtor's motion to sell real property free and clear of its ad valorem tax liens as the plan provided.[7] Because the order confirming the debtor's plan is final, Sedgwick County is bound by its terms and its objection to the sale must be overruled.

One of Mr. Rice's businesses involved buying and renting houses, sometimes with conventional financing and sometimes on contracts for deed. When Rice's health worsened, he lost the ability to keep track of these houses and many suffered from substantial deferred maintenance. He also let the ad valorem taxes on these properties lapse. In the plan, the GAL contended that Sedgwick County had significantly overvalued some of the properties and that a substantial portion of the taxes owed to the County were unsecured. The GAL proposed to sell these properties

---

[4] *See* Fed. R. Bankr. P. 1004.1; Dkt. 67.
[5] Dkt. 405.
[6] *See* Dkt. 409 (September 9, 2013 certificate of service of plan, disclosure statement, ballot, and notice to creditors, on Sedgwick County); Dkt. 463.
[7] *See* 11 U.S.C. § 363; Dkt. 475 (Motion for Sale No. 3); Dkt. 482 (Sedgwick County's Objection).

3

free and clear of any liens and to allow the County's secured claims at one-half of the total of taxes, interest, and penalties due on each tract.[8]

Part V of the Plan clearly articulates what the GAL intended to do in connection with overvalued properties with large tax claims. He stated that he would continue to offer these properties for sale under § 363 and allow Sedgwick County's claims at one-half of the outstanding taxes due—

> To the Sedgwick County Treasurer for one-half of the outstanding ad valorem taxes due on the Unproductive Real Estate as each parcel of the Unproductive Real Estate is sold. Sedgwick County will accept one-half of the ad valorem taxes in full satisfaction of its claim to such taxes on each parcel of the Unproductive Real Estate as those parcels are sold. Sedgwick County has been accruing ad valorem taxes on the parcels of Unproductive Real Estate using values (based on the deteriorated condition of the Unproductive Real Estate) that are significantly overstated.[9]

The reduced taxes were to be paid second after direct costs of sale. This plan was filed on September 3, 2013 and the disclosure statement approved.[10] The GAL balloted the plan and, on July 23, 2014, it was confirmed.[11] The County did not object to confirmation nor did it file a rejecting ballot. The County did file a proof of claim on June 27, 2011.[12] Now the GAL seeks to sell these overvalued properties as the plan contemplated and the County has objected to the sale motion, arguing that the

---

[8] *See* Dkt. 405, §§ 5.1-5.3, pp. 15-17.
[9] Dkt. 405, pp. 15-16.
[10] Dkt. 458 (Order approving Disclosure Statement). *See also,* Dkt. 423 (Courtroom minute sheet from hearing October 10, 2013).
[11] Dkt. 463. *See also,* Dkt. 448 (Courtroom minute sheet from confirmation hearing held March 18, 2014).
[12] *See* Claim No. 5 – claim for real estate taxes in amount of $21,804 for tax years 2006-2010 on various properties; the County designated the claim as secured and as an unsecured priority claim but did not state what portion of the claim was entitled to priority.

4

debtor's obligation to pay these taxes is excepted from his discharge and that the tax claims cannot be allowed as the plan suggests.[13] At a preliminary hearing on this motion to sell, the Court directed that the sales go forward, but that funds remaining after payment of the sale's direct costs, be held pending its order on the County's objection. To that end, the Court directed the parties to submit stipulations regarding the completed Sale No. 3 results. Several of the tracts garnered sufficient sales proceeds to pay the County more than one-half of the tax due on them.[14]

*Analysis*

Whether Sedgwick County is bound by the provisions of the confirmed plan that allowed its secured claims in a reduced amount depends upon whether it received appropriate notice of the plan in time to request to be heard. The County says that the notice of the plan was internally misdirected, depriving it of an opportunity to object and be heard. Fed. R. Bankr. P. 2002(b) requires that notice of the plan, along with an accompanying disclosure statement, be served on all creditors and parties in interest in a case and that they should have 28 days to file an objection. Notices are to be mailed to creditors at an address they request. Rule 2002(g)(1)(A) provides that when a creditor files a proof of claim that designates a mailing address, that filing represents a filed request for mailed notice at that address. The parties here agree that the GAL mailed the plan, disclosure statement, and notice to creditors

---

[13] Dkt. 475 (Sale No. 3 Motion); Dkt. 482 (Objection). The GAL filed a detailed response to the County's objection. Dkt. 483.
[14] *See* Dkt. 501 and 503 (Stipulations regarding Sale No. 3).

5

to the County at the address shown on its proof of claim.[15] Service of the notice was therefore sufficient.

The County didn't object and the plan, containing the treatment of which it belatedly complains, was confirmed. As § 1141(a) provides, a confirmed plan binds all creditors whether or not they have accepted the plan. The GAL's plan provided for the debtor's property to remain in the bankruptcy estate at confirmation while the GAL determined whether to liquidate it or to retain it in the Trust established under the plan for the debtor's care and maintenance. Once confirmation occurs, § 1141(c) states that the property of the estate is free and clear of all claims and interests of creditors except to the extent those creditor's debts were somehow excepted from the debtor's discharge under § 1141(d)(2). Section 1141(d)(2) incorporates any debt excepted from discharge under § 523.[16]

It is this latter provision, specifically § 523(a)(1)(A), upon which the County relies in its objection to the GAL's Sale No. 3. The County says that its real property tax claims should be excepted from Rice's discharge and that the properties they burden should remain subject to property tax liens in the original, not the adjusted, amounts. This argument fails for two reasons.

First, the only part of the tax claim that would be excepted from discharge is the property tax that came due for 2009 and 2010. The debtor owed unpaid ad

---

[15] *See* Dkt. 409 with attached matrix, p.3 and Claim No. 5.
[16] Section 523(a)(1)(A) in turn references taxes of the kind specified in § 507(a)(8). Property taxes are among the kind of taxes included in subpart (B) of § 507(a)(8).

6

valorem taxes dating from 2006.[17] He didn't file this case until May 1, 2011. At that time, his 2009 ad valorem taxes were last payable without penalty on May 10, 2010 and his 2010 taxes were payable on the same date in 2011. Section 523(a)(1) only excepts from discharge the *priority portion* of a tax claim allowable under § 507(a)(8)(B). That subsection only grants priority status to ad valorem tax claims that were payable without penalty a year before the date of the petition. As the GAL notes, only the 2009 and 2010 taxes could be eligible for priority treatment; the other years are properly classified as secured claims.[18]

Second, and of ultimate importance here, the County failed to object to the plan's confirmation. With that confirmation, the allowance of the County's secured claims became final and binding on the County. As numerous courts have held, once

---

[17] In Kansas, real estate taxes become due and a lien automatically attaches to the real estate on November 1 for each year that taxes are levied. KAN. STAT. ANN. § 79-1804 (1997). Section 79-2004(a) (2014 Supp.) permits the taxpayer to either pay the full amount on December 20 or may opt to pay one-half on December 20 and the remaining one-half on May 10 of the next year.

[18] Though it seems unlikely, we need not decide whether the debtor has personal liability for these priority taxes after discharge today because, in an individual chapter 11 case, the debtor does not receive a discharge until completion of all plan payments; confirmation of the plan does not discharge any debt provided for in the plan. *See* Bd. of Comm'rs of Ness Cnty. v. Hopper, 110 Kan. 501, 204 P. 536 (1922) (absent statutory provision so stating, title holder has no personal liability for any deficiency after tax foreclosure sale); *see also* § 1141(d)(5).The effect of confirmation under this debtor's plan is expressly made "[s]ubject to the limitations of 11 U.S.C. § 1141(d)." *See* Dkt. 405, p. 23, § 9.1. *See also In re Artisan Woodworkers,* 225 B.R. 185, 190-91 (9th Cir. BAP 1998) (Confirmed chapter 11 plan may not extinguish or discharge an otherwise nondischargeable debt, even when creditor fails to participate in plan confirmation process); *In re Newman,* 399 B.R. 541, 547 (Bankr. M.D. Fla. 2008) (individual chapter 11 plan that was confirmed did not extinguish otherwise nondischargeable debt, even where the debt was provided for in the plan); *In re DePaolo,* 45 F.3d 373, 375-76 (10th Cir. 1995).

7

a creditor receives appropriate notice and fails to act, and once the plan is confirmed, the creditor is bound by its terms and may no longer enforce its pre-confirmation lien.[19]

*Conclusion*

Sedgwick County's objection to the GAL's Motion for Sale No. 3 is therefore overruled; the GAL is authorized to distribute the proceeds of the sale of the contested tracts as set out in the confirmed plan and Notice of Sale.

###

---

[19] *In re American Properties, Inc.*, 30 B.R. 239, 246-47 (Bankr. D. Kan. 1983); *United States v. Victor,* 121 F.3d 1383, 1387-88 (10th Cir. 1997) (tax discharge exception and statute governing priority of allowed unsecured tax claims inapplicable to secured tax claims and therefore tax creditor with secured tax claim who did not object to confirmation was bound by confirmed chapter 11 plan).